See also 146 B.R. 486, 141 B.R. 231.

**In re BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a The Singer Company, Debtor.**

**Bankruptcy No. 89–8191–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 11, 1992.

Harley E. Riedel, Tampa, Fla., Donald E. Engle, St. Paul, Minn., Robert H. Wheeler, Chicago, Ill., for debtor.

William Goldman, North Miami Beach, Fla., for Creditors' Committee.

Thomas M. Donnelly, San Francisco, Cal., for Citation Entities.

Peter C. Califano, San Francisco, Cal., Mark J. Wolfson, Tampa, Fla., for William Mathews, Inc.

Kevin James, Oakland, Cal., for California Dept. of Health Services.

## ORDER ON OBJECTIONS
## TO CONFIRMATION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are Objections to the Confirmation of the "Amended and Restated Plan of Reorganization dated June 2, 1992 as Modified by the Modification of Amended and Restated Plan of Reorganization dated August 27, 1992" (Plan) filed by Bicoastal Corporation, d/b/a Simuflite, f/k/a The Singer Company (Debtor). The Objections were filed by the California Department of Toxic Substances formerly known as the California Department of Health Services (California), and William Mathews Agency, Inc., now known as William Mathews, Inc. (Mathews), and several partnerships and corporations collectively referred to as the Citation Entities (Citation). All of these Objections carry a basic common thread based on the contentions, primarily articulated by counsel for California and echoed by the other objectors, that the Plan under consideration unfairly discriminates against California, Mathews and Citation, or alternatively, that the Plan of the Debtors is not feasible, and therefore cannot be confirmed.

To put the issues raised by the Objections in proper focus, it should be helpful to recap briefly the status of the objecting parties in this Chapter 11 case which, as appears from the record, is as follows:

On November 30, 1989, this Court entered an Order and initially fixed the bar date to file a proof of claim as December 30, 1989. This date was later extended until January 31, 1990. The notice of the second bar date was mailed to all known parties of interest. In addition, a notice was also published in the national editions of the Wall Street Journal and The New York Times, and several other newspapers with general circulation, including the Los Angeles Times.

### THE CLAIM OF CALIFORNIA

The first claim of California was filed on July 26, 1990, in the amount of $7,492,-294.00. The second claim of California was filed February 5, 1992, in the amount of $43,653,894.00, and was accompanied by a Motion for Reconsideration of the Order denying the first claim. Both claims were based on alleged liability of the Debtor for the cost of cleanup of certain land located in California which was allegedly contaminated by the Debtor. The first claim was promptly challenged by the Debtor who filed an Objection to the allowance of same. There is no question that both claims were filed late, that is, after the time fixed by the Court as the bar date had expired. The Debtor's Objection was based first, on the contention that the claim was time barred and second, that it was unliquidated and contingent, and thus, cannot be allowed by virtue of § 502(c) of the Bankruptcy Code. This Court sustained the Debtor's objections and disallowed California's first claim and denied California's Motion for Reconsideration and disallowed the second claim. California timely filed two Notices of Appeal, but did not seek a stay pending appeal. These appeals are still pending in the District Court.

### THE CLAIM OF MATHEWS

William Mathews Agency, Inc., now known as William Mathews, Inc. (Mathews) never actually filed a Proof of Claim. Instead, on December 11, 1991, it filed a Motion and sought leave to file a claim after the bar date. In addition Mathews filed a Supplemental Motion on February 26, 1992 again seeking leave to file a claim after the bar date. Mathews attached a Proof of Claim as an Exhibit to the Supplemental Motion, asserting a claim in the amount of "not less than a Million dollars." This claim is also based on the alleged liability of the Debtor for contamination of land which was sold by the Debtor to Mathews, which is the same property subject to California's first claim. It is Mathews' contention that as the current owner of the land, it may be held liable to California for the cost of cleanup and, therefore, it is entitled to be reimbursed or made whole by the Debtor in the event Mathews is ultimately held liable by California for the cost of cleanup. The Debtor opposed the motion on the grounds that the claim was time

barred and that no excusable neglect existed. In addition, the Debtor also sought a disallowance on the ground that by virtue of § 502(e), the claim is for reimbursement or contribution to an entity whose claim against the estate was disallowed. Mathews' Motions were considered in due course and were denied by this Court on May 8, 1992, on both grounds asserted by the Debtor. Mathews, like California, promptly filed a Notice of Appeal but, again did not seek or obtain a stay pending appeal. This appeal is also still pending in the District Court.

## CLAIM OF CITATION

The claim of Citation is also based on the alleged liability of the Debtor for polluting land previously owned by the Debtor and sold to the Citation group. The Debtor's Objection to these claims is yet to be considered and, albeit it has already been heard, the matter is currently under advisement by this Court. Thus no Order of Allowance or Disallowance of this claim has been entered as of this date. Unlike the claims of California and Mathews, these claims are technically still presumptively valid and allowed claims unless they are ultimately disallowed. Thus, Citation's claims are different from the claims of California and Mathews. This is so because it is possible that as soon as this Court rules on the Citation claim and if the claim is allowed, it will receive distribution on its claim pro rata with the other allowed unsecured claims. On the other hand if disallowed and Citation challenges the disallowance by a timely filed Notice of Appeal, Citation may seek and obtain a stay pending appeal.

■ The Plan before this Court is challenged by California, Mathews and Citation on the same grounds described earlier. The Plan provides that all allowed unsecured claims in Class 13 will share pro rata in the fund which is initially estimated to be $62–70 million dollars. The Plan further provides that the Debtor will set aside and maintain a reserve for all disputed claims which will be challenged by the Debtor and will be used to pay the pro rata share of those which are ultimately allowed. There is no provision in the Plan specifically naming the disputed claims and, of course, the Plan does not provide for a reserve for the claims of California, Mathews or Citation.

This feature of the Plan, according to California and Mathews, joined in by Citation, unfairly discriminates against them and, therefore, the Plan cannot be confirmed by virtue of §§ 1129(b)(1) and 1122. This Section is known as the "cramdown" provision of the Code and was designed to assist and enable a Debtor who otherwise complies with § 1129(a) of the Code, with the exception of securing the requisite majority of the vote in number and amount of an impaired class, to obtain confirmation in spite of the rejection of an impaired dissenting class.

The reliance of the Objectors on § 1129(b)(1) is obviously misplaced and meritless. Since the last controlling Order entered by this Court is one which disallowed the claims of California and Mathews and there is no stay granted pending appeal, neither California nor Mathews have at this time an allowed claim and, therefore, they do not have a right to vote. The fact that the Order of Disallowance is challenged on appeal is of no moment because no stay pending appeal was sought or obtained. This Court is satisfied that this Debtor established that its Plan met all the requirements of § 1129(a) and obtained the affirmative vote in number and in amount of all impaired classes. This being the case, it is unnecessary for this Debtor to resort to the cramdown provision of § 1129(b) which obviously does not even come into play. The fact that the Plan has a provision setting aside a "reserve" to deal with disputed claims involves only disputed claims which ultimately may or may not be allowed, but does not involve the claims of California whose claims have been disallowed nor Mathews who never even filed a claim. That this provision does not specifically include the claims of California and Mathews, is without significance and does not render a Plan unconfirmable.

■ Mathews' and Citation's contention that this Plan does not meet the require-

ments of § 1129(a)(11) is without merit. This Section requires that the Debtor establish competent evidence that the Plan is feasible, and that the confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization. Citation's attack is apparently based upon its asserted administrative claim presently asserted for fixed amounts of less than $100,000.00 but for contingent amounts of up to $23 Million. The Debtor has not owned the property in question for more than a decade, and it has objected to Citation's administrative claim, as well as Citation's late filed prepetition claims. These matters are under advisement. The evidence presented concerning this requirement of the Code was more than sufficient and warrants the conclusion that this Debtor will have no difficulty whatsoever to consummate the Plan as proposed. First, it has sufficient cash on hand to meet the immediate cash requirements of the plan, including any potential administrative claim of Citation. In addition, it has sufficient remaining cash on hand to pay an initial dividend to unsecured creditors in the amount projected to be between twenty to thirty percent of the allowed unsecured claims. Finally, the Debtors are actively pursuing their very substantial claims: one against the State of Israel and the other, a claim for royalties against SSMC, Inc. and Microelectronics (Far East) Limited. It should be noted that the Debtor's right to royalties already has been determined by this Court and it is a right which exists in perpetuity. The only matter unresolved is a determination as to the amount due to the Debtor and the proper method of calculating the royalties. It is likely that this litigation will produce a substantial recovery which might very well enable this Debtor to give full satisfaction of all unsecured allowed claims.

In sum, this Court is satisfied that none of the objections are well taken for the reasons stated. Therefore, the Plan of Reorganization of the Debtor shall be confirmed by separate order.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Objections to Confirmation of the Amended and Restated Plan of Reorganization dated June 2, 1992 as Modified by the Modification of Amended and Restated Plan of Reorganization dated August 27, 1992 is overruled.

DONE AND ORDERED.